UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| STATE STREET CORPORATION, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-mc-91107-LTS |
| | ) | |
| ANATOLIE STATI et. al., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

ORDER ON REPORT AND RECOMMENDATION (DOC. NO. 46)

January 13, 2020

SOROKIN, J.

Respondents Anatolie Stati, Gabriel Stati, Ascom Group, S.A., and Terra Raf Trans Traiding Ltd. (the "Statis") object to a Report and Recommendation issued by Magistrate Judge Bowler (Doc. No. 44) recommending that the Court allow Petitioner State Street Corporation's application to stay a subpoena pending resolution of related proceedings in England. Doc. No. 46.[1] For the reasons articulated by Judge Bowler and further discussed below, the Court ADOPTS Judge Bowler's Report and Recommendation (Doc. No. 44).

BACKGROUND

In 2013, a Swedish arbitral tribunal awarded the Statis approximately $500 million against the Republic of Kazakhstan (the "Award"). Doc. No. 32 (Statement of Common Ground and List of Issues approved by the court in the English proceedings on February 15, 2019) at 9 ¶ 12. In October 2017, a Belgian Court issued an ex parte order authorizing the Statis to attach assets

---

[1]     Citations to "Doc. No. __" reference documents appearing on the court's electronic docketing system; pincites are to the page numbers in the ECF header.

1

belonging to the National Bank of Kazakhstan ("Kazakhstan Bank" or "NBK"), which were held by a London branch of the Bank of New York Mellon ("BNYM"), to permit satisfaction of the Award (the "Belgian Attachment").  Id. at 11 ¶ 19.  The Kazakhstan Bank carries out services with respect to assets of the Republic, comprising the National Fund of Kazakhstan ("National Fund").  Doc. No. 23-3 (Amended Particulars of Claim by Order of Mr. Justice Teare dated February 15, 2019) at 3. Pursuant to the Belgian Attachment, BNYM froze approximately $530 million dollars in cash assets of the Kazakhstan Bank.[2]  Id.  12 ¶ 21.  The Belgian Court also held that because BNYM held these assets under the terms of a Global Custody Agreement ("GCA") that is subject to English law, English courts should decide whether the Statis were, in the first instance, permitted to attach assets belonging to the Kazakhstan Bank to satisfy their Award against a different entity—the Republic of Kazakhstan.  Id. at 12-13 ¶¶ 21-23.  The Republic of Kazakhstan is not a party to the GCA.  Id. at 5 ¶ 8.

The Kazakhstan Bank and the Republic of Kazakhstan initiated proceedings before the High Court of Justice of England and Wales (the "English Court") to obtain a declaration that the Belgian Attachment did not authorize the Statis to freeze assets belonging to the Kazakhstan Bank in London (the "English proceedings").  Among other things, the English proceedings concern the relationship between the Kazakhstan Bank and the Republic of Kazakhstan, and between each of them and the National Fund.  Doc. No. 32 at 16 ¶ 5(d).  A trial in the English proceedings is scheduled for March 2020.  See Docs. No. 48-51.

After BNYM froze $530 million of its cash assets, the Kazakhstan Bank transferred the remaining assets it had deposited with BNYM—assets valued in the billions of dollars—to an as-yet-unnamed custodian.  Doc. No. 32 at 13-14 ¶ 24.

---

[2] This amount reflects the amount of the Award plus attorneys' fees and interest.

On March 23, 2018, the United States District Court for the District of Columbia issued a judgment confirming the Award ("D.C. Court Judgment"). Stati v. Republic of Kazakhstan, 302 F. Supp. 3d 187 (D.C.D. 2018). The D.C. Circuit affirmed that judgment. See Stati v. Republic of Kazakhstan, 773 Fed. Appx. 627 (D.C. Cir. 2019). The D.C. District Court denied the Republic's request for an unsecured stay of execution of the judgment, declined to authorize registration of its judgment in other districts, and has limited enforcement of its judgment to assets within the United States. See Doc. No. 7-6.

Following the D.C. Court Judgment, the Statis served State Street, a non-party to the dispute between the Statis and the Republic, a subpoena for a Rule 30(b)(6) deposition and a related document subpoena under Fed. R. Civ. P. 69, which provides for post-judgment discovery in aid of executing on a judgment. Fed. R. Civ. P. 69 ("In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located"). The subpoena seeks information regarding assets State Street manages for, the Kazakhstan Bank, the National Fund, and the National Investment Corporation of the National Bank of Kazakhstan, transactions and transfers involving those assets, as well information concerning any asset of the Republic of Kazakhstan. See Doc. No. 2-1.

State Street sought a protective order or, alternatively, an order to quash the subpoena. Doc. No. 2. After briefing and hearing, Judge Bowler recommended that the Court allow the application for a protective order to the extent that the subpoena is stayed pending resolution of the English proceedings, and deny without prejudice the request to quash the subpoena, which request can be renewed upon a lifting of the stay. Doc. No. 44 at 9-10. Judge Bowler also directed the parties to file status reports regarding the English proceedings every 90 days. Id. at 10.

The Statis object to Judge Bowler's Report and Recommendation.  <u>Doc. No. 46</u>.  State Street filed a response supporting it.  <u>Doc. No. 47</u>.

I.     <u>LEGAL STANDARD</u>

Recommendations from magistrate judges on dispositive matters under 28 U.S.C. § 636(b) require de novo review, while all other rulings or orders are subject to clearly erroneous review.  Fed. R. Civ. P. 72(b) (As to dispositive motions, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."); Fed. R. Civ. P. 72(a) (As to non-dispositive matters, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.").  Some case law holds that the final ruling on a discovery matter in a miscellaneous business docket matter such as this one qualifies as dispositive, <u>In re Admin. Subpoena Blue Cross Blue Shield of Mass., Inc.</u>, 400 F. Supp. 2d 386, 389 (D. Mass. 2005) (Saris, C.J.), even though such a ruling made in the course of pretrial management of civil litigation does not, Fed. R. Civ. P. 72(a).

This somewhat-unresolved legal question, which Judge Bowler properly recognized, <u>Doc. No. 44 at 8-9</u>, does not now require resolution.  Judge Bowler did not finally and conclusively determine the rights of the parties as to State Street's request.  Rather, she simply stayed the discovery sought by the Statis, subject to review every ninety days after receipt of the required status reports.[3]  Under these circumstances, the clearly erroneous standard of review applies.  <u>See, e.g.</u>, <u>Powershare, Inc. v. Syntel</u>, 597 F.3d 10, 14 (1st Cir. 2010) (A ruling on a motion to stay litigation "is not dispositive of either the case or any claim or defense within it. . . .  [I]n the last

---

[3]     Though Judge Bowler did not state expressly she intended to review the stay of discovery after each status report, the only reasonable conclusion to draw from her Report and Recommendation is that if she thought any filed status report warranted lifting the stay, she would do so sua sponte.  Of course, nothing prevents either party from requesting a lifting of the stay at any time.

analysis a stay order is merely suspensory.  Even if such a motion is granted, the court still retains authority to dissolve the stay. . .").

II.    <u>DISCUSSION</u>

After review of the record in this case, the Court makes the following rulings and findings. Judge Bowler plainly applied the correct legal standard, weighed the various applicable factors, heard from the parties, considered the record as a whole, and made a well-reasoned, sensible application of the law to the facts.  Her decision is not clearly erroneous or infected by legal or factual error.

Two further points bear mention.  The Statis contend Judge Bowler made a factual error, induced by State Street, which infected her decision.  <u>See generally</u> <u>Doc. No. 46</u>.  That error, they contend, is that she did not recognize that State Street continues to manage assets held by the Kazakhstan Bank—assets that have been transferred out of BNYM, and so are not at issue in the English proceedings.  <u>Id.</u>  Judge Bowler did not so err.   She noted correctly that after freezing assets it held on behalf of the Kazakhstan Bank, BNYM "made a garnishee's declaration stating that 'in view of its contractual relationship with [NBK] and the uncertainties of the legal relationship existing between [NBK] and the Republic of Kazakhstan,' the possibility existed that 'BNYM holds assets of or for the Republic of Kazakhstan (including the National Fund) which are the subject of the garnishment.'"  <u>Doc. No. 44 at 3</u> (quoting <u>Doc. No. 32 at 12</u>).  And she properly recognized that "[a]mong the issues to be resolved in the English proceedings are 'the nature of the relationship between NBK and Kazakhstan and between each of them and the National Fund,' as well as whether NBK assets held by BNYM are 'the property of, or property held for, Kazakhstan rather than (or as well as) NBK.'"  <u>Id.</u> at 3 (quoting <u>Doc. No. 32 at 16</u>).  The discovery sought by way of the subpoena concerns many of these issues.

Judge Bowler thus reasonably concluded that "[a]s State Street provides services to NBK, not ROK [the Republic of Kazakhstan], issues of the relationship between ROK and NBK and whether NBK assets can be attached to satisfy the award against ROK are highly relevant to the question of whether the Statis may seek discovery of State Street's management of NBK assets." Id. (citing Doc. No. 8 at 6).  As she rightly observed, "[r]egardless of whether a decision favorable to the Statis in the English proceedings will necessarily result in satisfaction of the award, this court finds that those proceedings will likely settle and/or simplify a number of questions relevant to this action."  Id.

That subsequent to the Belgian Attachment, billions in unattached assets belonging to the Kazakhstan Bank were moved out of BNYM and that some of these assets may still be under State Street's management—whether held by BNYM or another entity—is not a factual error bearing on the basis for Judge Bowler's decision.  In any event, the fact of that transfer was before Judge Bowler (see Doc. No. 32 at 13-14 ¶ 24), and she made no findings contrary to or inconsistent with that fact.

Finally, the Court has considered the entire matter de novo.  Applying that standard, the Court ADOPTS Judge Bowler's recommendation for the reasons expressed in her recommendation and further discussed herein.

III.    CONCLUSION

Accordingly, State Street's application for a protective order (Doc. No. 2) is ALLOWED IN PART to the extent that the subpoena is STAYED pending resolution of the English proceedings, and the application to quash the subpoena (Doc. No. 2) is DENIED WITHOUT PREJUDICE to renewal upon the lifting of the stay.  As Judge Bowler previously directed, the parties shall continue to file status reports every ninety days.

This matter remains referred to Judge Bowler for all purposes.

                    SO ORDERED.


                    /s/ Leo T. Sorokin
                    Leo T. Sorokin
                    United States District Judge